UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| David Oliver Stotesbery<br>813 Whitewater Ave<br>Fort Atkinson, WI 53538<br><br>Plaintiff, pro se,<br><br>v.<br><br>Dousman Transport Company, Inc<br>313 S. Main Street<br>Dousman, WI 53118<br><br>Defendant. | Case Number: 25-cv-759-jdp<br><br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR DE NOVO REVIEW UNDER 49 U.S.C. § 31105 (STAA)**

**I. NATURE OF THE ACTION**

1. This is an action for de novo review under the whistleblower provisions of the Surface Transportation Assistance Act ("STAA"), 49 U.S.C. § 31105. Plaintiff seeks relief for unlawful retaliation after he reported and refused to operate an unsafe school bus and after he reported coercive and dangerous behavior of his terminal manager to corporate staff.

2. More than 210 days have elapsed since Plaintiff filed his OSHA/STAA complaint with the Secretary of Labor, no final decision has issued, and any delay is not attributable to Plaintiff's bad faith. Plaintiff therefore has the right to bring this original action in federal court. 49 U.S.C. § 31105(c).

3. Plaintiff alleges Defendant retaliated against him because he engaged in protected activities, including:

  a. Refusing to operate a commercial motor vehicle he reasonably believed to be unsafe and in violation of safety regulations; and

  b. Reporting the vehicle's safety defects and related retaliatory misconduct to management, the school district, and other authorities.

4. Plaintiff does not seek reinstatement. In lieu of reinstatement, he seeks back pay, front pay, and equitable relief, including an order requiring Defendant to fund all training, testing, medical, and licensing costs necessary to restore his Class B CDL with passenger and school bus endorsements, which lapsed as a direct result of Defendant's unlawful conduct.

5. OSHA dismissed Plaintiff's administrative complaint on the ground that no "adverse action" occurred because Plaintiff "voluntarily resigned." That conclusion misapplies the law. A forced resignation/constructive discharge is a cognizable adverse action under the STAA. An employer cannot evade liability by coercing a firing and labeling it a "quit."

## II. JURISDICTION, VENUE, AND COVERAGE

6. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 49 U.S.C. § 31105(c). This action is authorized without regard to the amount in controversy and proceeds de novo.

7. Venue is proper in the Western District of Wisconsin under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred at Defendant's Jefferson, Wisconsin terminal, within this District.

8. At all relevant times, Plaintiff was an "employee" under 49 U.S.C. § 31101(2) (a driver of a commercial motor vehicle—school bus designed to carry more than 10 passengers).

Defendant is a commercial motor carrier and "employer" under 49 U.S.C. §§ 31101(1) and 31105. Both are subject to the STAA.

9. As a pro se litigant, Plaintiff's case is exempt from the initial disclosure and Rule 26(f) conference requirements under Fed. R. Civ. P. 26(a)(1) and 26(f), pursuant to Administrative Order 238 of the Western District of Wisconsin.

### III. PARTIES

10. Plaintiff David Oliver Stotesbery is an adult residing at 813 Whitewater Ave, Fort Atkinson, Wisconsin 53538. He was employed part-time as a school bus driver at Defendant's Jefferson terminal from February 2022 until September 20, 2023.

11. Defendant Dousman Transport Company, Inc. ("DTC") is a Wisconsin corporation engaged in pupil transportation, with its principal office at 313 S. Main Street, Dousman, WI 53118, and operations throughout the state, including its Jefferson terminal at 1501 Industrial Avenue, Jefferson, WI 53549.

### IV. ADMINISTRATIVE BACKGROUND

12. On September 28, 2023, Plaintiff timely filed an OSHA whistleblower complaint under the STAA (OSHA Case No. 301024164) alleging he was forced out of his job in retaliation for reporting dangerous coercive behavior from his terminal manager and refusing to drive an unsafe bus.

13. On November 21, 2023, OSHA dismissed the complaint on the stated ground that Plaintiff "voluntarily resigned" after being told to return to work. Plaintiff contends that finding was

erroneous because it failed to recognize the constructive discharge that had already occurred.

14. Plaintiff timely objected to OSHA's findings and requested a hearing before the Department of Labor Office of Administrative Law Judges (OALJ Case No. 2024-STA-00026), now assigned to ALJ John P. Sellers III. The parties engaged in discovery and motion practice.

15. More than 210 days have elapsed since Plaintiff filed with OSHA, and no final decision has been issued by the Secretary of Labor. Plaintiff therefore exercises his right under 49 U.S.C. § 31105(c) to file this original action in U.S. District Court for trial de novo. Plaintiff has diligently prosecuted his claim; any administrative delays were not caused by Plaintiff.

## V. FACTUAL ALLEGATIONS

16. School bus drivers are required to perform a pre-trip safety inspection before operation. Federal law requires that emergency exits open properly and not require excessive force. Specifically, 49 C.F.R. § 571.217 S5.3.1 mandates that a school bus emergency exit must be releasable with no more than 178 Newtons (40 pounds) of force.

17. On September 20, 2023, Plaintiff reported for his afternoon route. His first assigned bus, Bus 39, had a broken mirror bracket (a repeat issue previously reported). Plaintiff returned Bus 39 to the terminal and was reassigned to Bus 69.

18. During the pre-trip inspection of Bus 69, Plaintiff discovered the rear emergency exit door was jammed and required forceful kicking to open from the inside. In Plaintiff's reasonable judgment, the bus failed pre-trip and was unsafe to operate with students aboard.

19. At approximately 3:02–3:06 p.m., Plaintiff reported the defect to Terminal Manager Jamie Magner by phone call and text message, explaining that the rear door was stuck, that he

had to kick it to get it open, and that he would not drive the bus in that condition. Magner responded that no other buses were available.

20. Plaintiff reiterated that he would not operate an unsafe bus. Plaintiff's refusal was protected activity under 49 U.S.C. § 31105(a)(1)(B).

21. Defendant has admitted through discovery that Bus 39's mirror was broken and that Bus 69's emergency exit was not working properly, requiring the bus to be removed from service on September 20, 2023. These admissions confirm that Plaintiff's refusal was objectively reasonable and protected under federal law.

22. At approximately 3:07 p.m., Magner confronted Plaintiff in person and issued an ultimatum: (a) drive the unsafe bus; (b) remain at the terminal while Magner drove the route in that same bus; or (c) leave, which Magner stated would be treated as a quit.

23. Faced with no safe or lawful option, Plaintiff left the terminal rather than operate—or condone operation of—an unsafe school bus.

24. At 3:11 p.m., minutes after Plaintiff left, Magner texted: "Ok. So, you chose to walk off your job. That is a quit. I did NOT fire you." Plaintiff immediately replied that he left because Magner attempted to force him to drive a bus with obvious safety violations.

25. By 3:11 p.m. on September 20, 2023, Defendant—through Magner—had ended Plaintiff's employment, characterizing it as a resignation when, in fact, Plaintiff's departure was compelled by the unlawful ultimatum. The separation was a constructive discharge attributable to Defendant. Defendant admitted in discovery that it was aware of Plaintiff's report about Bus 69's defective emergency exit on September 20th, 2023. Thus, when Defendant declared Plaintiff's separation at 3:11 p.m., it did so with full knowledge that Plaintiff had just engaged in protected activity.

26. At approximately 3:13 p.m., Plaintiff called Larry Kirkley, Defendant's President/CEO, and reported both the unsafe condition of Bus 69 and Magner's retaliatory ultimatum. Kirkley said he would address it; however, no one from DTC aside from Magner contacted Plaintiff further that day.

27. At 4:59 p.m., Magner emailed Plaintiff stating Bus 39 had been repaired and Bus 69 was out of service until its rear door bracket was fixed, and concluded: "See you in the a.m."

28. The email did not retract the earlier "quit" characterization, did not acknowledge that employment had already been ended at 3:11 p.m., did not offer any terms of reinstatement, or address the ultimatum.

29. At 9:33 p.m., having received no clarification or rescission of the ultimatum, Plaintiff emailed Magner (copying corporate officials), recounting the three choices she had given and stating he was "sticking with #3," explaining that the position she put him in was unacceptable. This contemporaneous email documented that the separation arose solely from Plaintiff's protected refusal and safety complaints and confirmed the status Defendant had already imposed at 3:11 p.m.

30. Around 3:15 p.m., Plaintiff made an external safety report to East Elementary School, warning that Bus 39 and Bus 69 should be out of service until repaired, to protect student passengers. School staff acknowledged the concern.

31. On September 22, 2023, Plaintiff emailed Dr. Charles Urness, Superintendent of the School District of Jefferson, outlining the bus defects and Magner's ultimatum and urging action to prevent harm.

32. On September 27, 2023, Plaintiff learned that Defendant's President addressed a drivers' meeting at the Jefferson terminal and publicly disparaged Plaintiff as a liar regarding the

    safety issues and the circumstances of his departure. Defendant also communicated with district officials in a manner that protected its contract while undermining Plaintiff's credibility.

33. Defendant did not investigate Plaintiff's safety complaint or his retaliation report and instead ratified Magner's actions. Plaintiff was never returned to the schedule, never paid for the balance of the week, and was treated as separated as of September 20, 2023. Defendant admitted in discovery that it conducted no investigation into the circumstances of Plaintiff's departure and took no disciplinary action against Terminal Manager Magner, despite her role in the ultimatum. This confirms Defendant's ratification of retaliatory conduct and failure to follow its own written policies.

34. As a result of Defendant's conduct, Plaintiff suffered lost wages and benefits, emotional distress, and reputational harm. Because he was out of work and could not afford renewals, his Class B CDL with passenger and school bus endorsements lapsed, requiring re-training, re-testing, and new medical certification.

## VI. CLAIMS FOR RELIEF

**Count 1 — Retaliation for Refusal to Operate an Unsafe Vehicle**

35. Plaintiff realleges paragraphs 1–34.

36. Plaintiff refused to operate Bus 69 on September 20, 2023 because doing so would have violated federal safety standards and, alternatively, because he had a reasonable apprehension of serious injury to passengers if he drove the bus. Plaintiff sought correction of the hazard and was unable to obtain it (no safe alternate bus; no immediate fix).

37. In direct response to this refusal, Defendant—through Magner—ended Plaintiff's employment by declaring his departure a "quit" and treating him as separated. This would dissuade a reasonable employee from refusing an unsafe assignment and constitutes retaliation prohibited by § 31105(a)(1)(B).

38. Plaintiff's protected refusal was a contributing factor in the adverse action.

39. Defendant cannot prove by clear and convincing evidence that it would have taken the same action absent Plaintiff's refusal. Plaintiff engaged in no misconduct; he complied with safety law and company policy.

**Count 2 — Retaliation for Reporting Safety Concerns**

40. Plaintiff realleges paragraphs 1–39.

41. Plaintiff made protected complaints furnishing information related to motor vehicle safety, including reports to Magner, to Kirkley/corporate management, to East Elementary, and to Superintendent Urness.

42. Defendant was aware of these reports and, in retaliation, terminated/constructively discharged Plaintiff, failed to investigate his complaints, and disparaged/blacklisted him to coworkers and community stakeholders.

43. Plaintiff's protected reporting was a contributing factor in these adverse actions.

44. Defendant cannot show by clear and convincing evidence that it would have taken the same actions absent Plaintiff's safety complaints.

**Count 3 — Adverse Action by Constructive Discharge**

45. Plaintiff realleges paragraphs 1–44.

46. Even if Defendant contends Plaintiff "resigned," the resignation was forced by Defendant's ultimatum (drive unsafely or quit), the immediate pronouncement that he had "quit" for refusing, and the lack of corrective action by upper management—conditions that would compel a reasonable person to feel no choice but to leave. The law treats such forced resignations as discharges. The adverse-action element is therefore satisfied.

### Count 4 — Retaliation for Reporting Retaliation (Protected Activity)

47. Plaintiff realleges paragraphs 1–46.

48. Plaintiff's 3:13 p.m. call to the President and his 9:33 p.m. email to corporate management again reported Magner's retaliatory conduct (the unlawful ultimatum and "quit" pronouncement), this time in writing.

49. Reporting retaliation connected to a safety complaint is itself protected activity.

50. Defendant ignored these reports, ratified Magner's conduct, and continued reprisals.

51. Plaintiff's reporting of retaliation was a contributing factor in Defendant's adverse decisions.

### Count 5 — Post-Employment Retaliation / Blacklisting

52. Plaintiff realleges paragraphs 1–51.

53. The STAA prohibits an employer from "discriminat[ing] in any manner" because of protected activity, which includes blacklisting and negative job references post-employment.

54. After Plaintiff's protected activities, Defendant further retaliated by disparaging Plaintiff publicly and to community partners, effectively blacklisting him from future employment opportunities.

55. These acts were taken because of Plaintiff's protected conduct and caused additional harm.

## VII. DEMAND FOR JURY TRIAL

56. Plaintiff demands a trial by jury on all issues so triable pursuant to 49 U.S.C. § 31105(c) and the Seventh Amendment.

## VIII. PRAYER FOR RELIEF

57. WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant, and award the following relief:

    a. Declaration that Defendant violated the STAA, 49 U.S.C. § 31105, and that Plaintiff was unlawfully retaliated against for engaging in protected activities;

    b. In lieu of reinstatement (which Plaintiff does not seek), an award of front pay for a reasonable period sufficient to make Plaintiff whole, together with back pay for lost wages and benefits from September 20, 2023 through judgment, plus pre-judgment interest;

    c. Compensatory damages for emotional distress, mental anguish, reputational harm, and other special damages proximately caused by Defendant's unlawful conduct;

    d. Punitive damages up to the statutory maximum of $250,000, pursuant to 49 U.S.C. § 31105(b)(3)(C), to punish and deter willful or reckless disregard of Plaintiff's rights;

    e. Tailored equitable relief to restore Plaintiff's professional standing, including but not limited to:

        1. An order requiring Defendant to fund and facilitate all training, testing, DOT medical examination, refresher courses, fees, and administrative costs necessary to reinstate Plaintiff's Class B CDL with passenger and school bus endorsements;

        2. Expungement from all personnel and internal records of any indication that Plaintiff "quit" or was terminated for misconduct, and correction to reflect a non-culpable separation;

        3. Implementation of a neutral reference policy prohibiting negative or derogatory information about Plaintiff; references shall be limited to dates of employment and position (or "eligible for rehire");

        4. A permanent injunction prohibiting Defendant and its agents from further retaliatory or blacklisting behavior, and requiring Defendant to correct prior false or disparaging statements disseminated to third parties, including notice to the school district and relevant counterparties that Plaintiff engaged in protected safety activity and suffered retaliation;

    f. Litigation costs and expenses incurred in this action and in the prior administrative action, including expert witness fees, and reasonable attorney's fees if Plaintiff retains counsel, as provided by 49 U.S.C. § 31105(b)(3)(B) (Plaintiff is presently pro se but reserves the right to seek counsel and fees);

    g. Post-judgment interest as allowed by law; and

  **h.** Such other and further relief as the Court deems just and proper.


Dated: September 10th, 2025

Respectfully submitted,

/S David Oliver Stotesbery


DAVID OLIVER STOTESBERY (Plaintiff, pro se)
813 Whitewater Avenue
Fort Atkinson, WI 53538
Tel: (920) 542-8635
Email: mrstotes@pm.me