IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DAVID STOTESBERY,

Plaintiff,

v.

DOUSMAN TRANSPORT COMPANY, INC.,

Defendant.

OPINION and ORDER

25-cv-759-jdp

---

Plaintiff David Stotesbery, proceeding without counsel, alleges that his former employer, defendant Dousman Transport Company, Inc., retaliated against him for refusing to operate a school bus that he reported was unsafe. Stotesbery brings a retaliation claim under the Surface Transportation Assistance Act.

Dousman moves to dismiss, contending primarily that this court lacks jurisdiction to hear the complaint because Stotesbery filed it before the administrative process had become final. Dkt. 7.

Stotesbery is proceeding without prepaying the filing fee. So, in addition to ruling on Dousman's motion to dismiss, I must screen the complaint under 28 U.S.C. § 1915(e)(2)(B) and dismiss any part of it that is frivolous or malicious, fails to state a plausible claim for relief, or seeks money damages from an immune defendant. I must accept Stotesbery's allegations as true and construe them generously, holding the complaint to a less stringent standard than one a lawyer drafts. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

I will dismiss the complaint for failure to state a plausible claim for relief, but I will allow Stotesbery to amend the complaint to fix that problem. I will deny Dousman's motion to dismiss.

ALLEGATIONS OF FACT

Dousman is a Wisconsin corporation engaged in student transportation. Stotesbery was employed part-time as a school bus driver at Dousman's Jefferson terminal from February 2022 until September 20, 2023.

On that date, Stotesbery reported for his afternoon route. During his pre-trip inspection of bus 39, Stotesbery noticed that it had a broken mirror bracket. Stotesbery returned bus 39 to the terminal and was reassigned to bus 69.

During his pre-trip inspection of bus 69, Stotesbery noticed that the rear emergency exit door was jammed and required forceful kicking to open from the inside. Stotesbery believed that the bus was unsafe to operate with students aboard.

From 3:02 to 3:06 p.m. that afternoon, Stotesbery reported by phone and text message his concerns to the terminal manager, Jamie Magner. Stotesbery told Magner that he refused to drive the bus because of his safety concerns, but she said that no other buses were available. Stotesbery reiterated that he refused to operate a bus that he deemed to be unsafe.

At 3:07 p.m., Magner spoke with Stotesbery in person and gave him three options: (1) drive the bus; (2) stay at the terminal while Magner drove the bus; or (3) leave, which Magner would treat as a resignation. Stotesbery left the terminal.

At 3:11 p.m., Magner texted Stotesbery, writing that he resigned and that she did not fire him. Stotesbery replied that he left because Magner tried to make him drive an unsafe bus.

At 3:13 p.m., Stotesbery called Dousman's president, Larry Kirkley, and told him that the bus was unsafe and that Magner had given him a "retaliatory ultimatum." Dkt. 1 ¶ 26.

At 3:15 p.m., Stotesbery reported to East Elementary School that buses 39 and 69 should be taken out of service until repaired to ensure student safety. Two days later,

Stotesbery emailed the superintendent of Jefferson School District, Dr. Charles Urness. Stotesbery told Urness that the buses were defective and that Magner had given him an ultimatum.

At 9:33 p.m., Stotesbery emailed Magner, saying that she had given him an ultimatum. Stotesbery copied Dousman officials on this email.

Five days later, Kirkley attended a drivers' meeting at the Jefferson terminal and called Stotesbery a "liar regarding the safety issues and the circumstances of his departure." *Id.* ¶ 32. Dousman communicated with Jefferson School District officials "in a manner that protected its contract while undermining Plaintiff's credibility." *Id.*

Dousman failed to investigate Stotesbery's safety complaint and report of retaliation, and it took no disciplinary action against Magner.

BACKGROUND

On September 28, 2023, Stotesbery filed a complaint under the Surface Transportation Assistance Act (STAA) in the U.S. Department of Labor, Occupational Safety and Health Administration, Chicago Regional Office (OSHA). Dkt. 10-1 at 5. On November 21, 2023, OSHA's regional supervisory investigator, Shawn Harrigan, issued findings dismissing the complaint. *Id.* at 6. Harrigan found that the evidence showed that Dousman did not subject Stotesbery to an adverse employment action because he "elected to resign his employment." *See id.* at 5.

On December 8, 2023, Stotesbery appealed Harrigan's dismissal to the U.S. Department of Labor, Office of Administrative Law Judges (OALJ). Dkt. 10-2 at 1. The parties engaged in discovery, including a deposition of Stotesbery. Dkt. 1 ¶ 14; Dkt. 7 at 3. On

September 10, 2025, before an administrative hearing was scheduled, Stotesbery brought his complaint in this court. Dkt. 1; Dkt. 10-3 at 1. Stotesbery alleged that this court had jurisdiction over his complaint because more than 210 days had elapsed since the filing of his administrative appeal and "no final decision [had] issued." Dkt. 1 ¶ 2 (citing 49 U.S.C. § 31105(c)). On September 22, 2025, the administrative law judge (ALJ), John P. Sellers, III, dismissed the appeal without prejudice based on Stotesbery's filing of this case. Dkt. 10-3 at 1.

## ANALYSIS

### A.  Motion to dismiss

Dousman contends that this court lacks subject-matter jurisdiction over Stotesbery's complaint because "federal law" does not allow an "STAA claimant" to withdraw an appeal pending in the OALJ because the individual becomes "impatient with the administrative process." *See* Dkt. 7 at 5–6. This approach, Dousman adds, "makes for an unholy mash-up of legal remedies" and is not the procedure "intended in the statute." *Id.* at 6.

As Stotesbery did here, employees who believe that they have been discharged in violation of the STAA's anti-retaliation provision can file an administrative claim. *See* § 31105(b). If a party desires review, including judicial review, of OSHA's findings, the party must file objections and request a hearing on the record within 30 days of receiving the findings. *See* 29 C.F.R. § 1978.101(b), §§ 1978.105–06. Upon receiving an objection and a request for hearing, the chief ALJ must promptly assign an ALJ to the case, who must schedule a hearing and notify the parties. *See id.* § 1978.107(b). Any party desiring review, including judicial review, of the ALJ's decision must file a written petition for review with the Administrative Review Board (ARB). *Id.* § 1978.110(a).

4

But a claimant does not always have to wait until the administrative review process is complete to seek judicial review. Under the STAA's "kick out" provision, if a "final decision" has not been issued "within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee, the employee may bring an original action at law or equity for de novo review in the appropriate district court of the United States." § 31105(c).

Here, Stotesbery filed his administrative complaint on September 28, 2023. Harrigan issued findings dismissing the complaint on November 21, 2023. Stotesbery timely appealed Harrigan's findings. Well later, on September 10, 2025, Stotesbery brought his complaint in this court, after which the ALJ dismissed the administrative appeal. Starting from the filing of the administrative complaint, nearly two years elapsed before a hearing was even scheduled in the OALJ, let alone before a final decision was issued. Dousman does not contend that the delay in scheduling a hearing, or the delay in the issuance of a decision by ALJ or ARB, was caused by any bad faith by Stotesbery. The statement that the parties had engaged in discovery and "completed all pre-hearing preparations" does not suggest that to be the case. *See* Dkt. 7 at 6. Stotesbery has shown that this court has jurisdiction over his federal complaint under § 31105(c).

Dousman contends that § 31105(c) doesn't apply because Harrigan "investigate[]d and dismiss[ed] the complaint on November 2[1], 2023," which was within 210 days of its filing on September 28, 2023. *See* Dkt. 7 at 1. This contention lacks merit. As a general rule, the Secretary of Labor's decision becomes final when the ARB issues its final decision and order. *See Dalton v. U.S. Dep't of Lab.*, 58 F. App'x 442, 444 (10th Cir. 2003); 29 C.F.R. § 1978.110. On its face, the STAA distinguishes the OSHA investigator's findings from the "final order." *See* § 31105(b). The 210-day "kick out" period continues to apply while the employee's appeal

of the investigator's findings is pending before the ALJ. *See Wilson v. CTW Transportation Servs., Inc.*, 74 F.4th 924, 925–26 (8th Cir. 2023). In dismissing Stotesbery's appeal, the ALJ acknowledged that the "kick out" provision applied. *See* Dkt. 10-3 at 1 (citing 29 C.F.R. § 1978.114).

Dousman contends essentially that interpreting the "kick out" provision to allow a party to abandon a pending administrative appeal is undesirable policy. Even if this concern were valid, it is immaterial because the "kick out" provision unambiguously applies in this case. *See Dec v. Mullin*, 171 F.4th 940, 944 (7th Cir. 2026) ("If the statute's plain meaning is unambiguous, the interpretive inquiry ends and application begins."); *21st Mortg. Corp. v. Warfel*, No. 22-cv-88-jdp, 2022 WL 17663908, at *1 (W.D. Wis. Dec. 14, 2022) ("[R]eliance on policy considerations can't override the unambiguous text of the statute."). I will deny Dousman's motion to dismiss.

## B. Screening the complaint

Stotesbery brings a retaliation claim under the STAA based on four primary theories. Stotesbery alleges that Dousman retaliated against him because he: (1) refused to operate an unsafe vehicle; (2) reported safety concerns; (3) reported retaliation; and (4) "blacklist[ed] him from future employment opportunities." Dkt. 1 at 7–10. Stotesbery also explains that the "adverse action" requirement of a retaliation claim is met by his "constructive discharge." *Id.* at 8–9.

### 1. Preliminary matter

Dousman brings its motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), contending that the court lacks jurisdiction to hear the complaint and that it fails on the merits. Regarding the Rule 12(b)(6) motion challenging the merits of Stotesbery's

6

claims, Dousman contends that he "failed to show he suffered an adverse action as required to prove an STAA violation." Dkt. 7 at 1. But Dousman didn't develop any argument that Stotesbery failed to state a plausible claim for relief. Dousman's contention that dismissal on the merits under Rule 12(b)(6) is warranted appears to be based exclusively on Harrigan's findings dismissing Stotesbery's complaint. But Dousman hasn't explained why it would be proper for the court to accept Harrigan's findings when ruling on a Rule 12(b)(6) motion. *See id.* at 2–3. Because this argument is undeveloped, Dousman has forfeited it. *See Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 833 (7th Cir. 2014) ("[A]s the district court found, the . . . argument was forfeited because it was perfunctory and underdeveloped."). But I still must screen Stotesbery's claims on the merits under § 1915(e)(2)(B).

### 2. First theory of retaliation

Stotesbery alleges that Dousman retaliated against him because he refused to operate an unsafe bus. The STAA prohibits an employer from taking adverse action against an employee because he has engaged in a form of activity that the statute protects. *Formella v. U.S. Dep't of Lab.*, 628 F.3d 381, 389 (7th Cir. 2010). As it relates to Stotesbery's first theory, the STAA prohibits an employer from discharging, disciplining, or discriminating against an employee "regarding pay, terms, or privileges of employment" if the employee refuses to operate a vehicle because: (1) the operation violates a federal regulation, standard, or order related to commercial motor vehicle safety, health, or security; or (2) the employee has a reasonable apprehension of serious injury to the employee or the public because of the vehicle's hazardous safety or security condition. *See* § 31105(a)(1)(B).

Stotesbery has plausibly alleged that he engaged in protected activity by refusing to drive bus 69 based on his pre-trip inspection that revealed problems with the rear emergency

exit door. The issue is whether Stotesbery has plausibly alleged that Dousman took adverse action against him based on this refusal.

Stotesbery alleges that Magner took adverse action against him based on this refusal by "declaring his departure" as a resignation even though it was "compelled by the unlawful ultimatum." Dkt. 1 ¶¶ 25, 37. Stotesbery explains that Magner gave him three options: (1) drive the bus; (2) stay at the terminal while Magner drove the bus; or (3) leave, which Magner would treat as a resignation. I will assume for screening purposes that a decision to stop working for Dousman in response to an "ultimatum" consisting only of the first and third options would be adverse action. But Magner gave Stotesbery another option: staying at the terminal while Magner drove the bus. This allegation, even in the complaint's full context, doesn't plausibly suggest that Magner pressured Stotesbery to resign because of his refusal to drive the bus, or that he reasonably would have believed that his termination was imminent if he stayed at the terminal. Stated differently, Stotesbery hasn't alleged any facts plausibly suggesting that having to stay at the terminal while Magner drove the bus amounted to discipline or discrimination in the pay, terms, or privileges of his employment. I will not allow Stotesbery to proceed on a retaliation claim based on his first theory.

### 3. Second theory of retaliation

Stotesbery alleges that Dousman retaliated against him because he reported safety concerns. More specifically, Stotesbery alleges that he made "protected complaints furnishing information related to motor vehicle safety" to Magner, Kirkley, and Jefferson School District officials. *See id.* ¶ 41. Stotesbery also alleges that Dousman was aware of these complaints and "terminated/constructively discharged" him, failed to investigate the complaints, and "disparaged/blacklisted him to coworkers and community stakeholders." *Id.* ¶ 42.

8

As it relates to Stotesbery's second theory, the STAA prohibits an employer from discharging, disciplining, or discriminating against an employee "regarding pay, terms, or privileges of employment" because: (1) the employee has filed a complaint or begun a proceeding related to a violation of a commercial motor vehicle safety or security regulation, standard, or order; or (2) the employer "perceives that the employee has filed or is about to file a complaint or has begun or is about to begin a proceeding related to a violation of a commercial motor vehicle safety or security regulation, standard, or order." *See* § 31105(a)(1)(A)(i)–(ii). I will assume for screening purposes that these provisions cover both written and oral complaints about transportation safety to the employer or a government agency. *See Gaines v. K-Five Const. Corp.*, 742 F.3d 256, 268–69 (7th Cir. 2014).

To state a claim, Stotesbery must allege that Dousman took adverse action against him based on his reported safety concerns. *See Formella*, 628 F.3d at 389. I will assume for screening purposes that the STAA's anti-retaliation provisions cover post-employment retaliatory conduct that amounts to adverse action. *Cf. Abdullahi v. Prada USA Corp.*, 520 F.3d 710, 713 (7th Cir. 2008) (noting that a similar statute, Title VII, covers post-termination retaliation). Such post-employment actions may include "blacklisting" and other conduct that "foreclose[s] future employment possibilities." *Cf. Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 890 (7th Cir. 1996). Conclusory allegations, however, fail to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

As I've explained, Stotesbery's allegations don't plausibly suggest that Dousman terminated or constructively discharged him; he alleges that he stopped working for Dousman even though Magner said that he could stay at the terminal while she drove the bus. Stotesbery also alleges that Dousman failed to investigate his complaints and disparaged and blacklisted

9

him, but these allegations lack factual support. Stotesbery vaguely alleges that Kirkley called him a liar at a meeting and communicated with school officials in a manner that undermined his credibility, but he doesn't explain how this conduct "blacklisted" him or otherwise foreclosed any future employment possibility. I will not allow Stotesbery to proceed on a retaliation claim based on his second theory.

### 4. Third theory of retaliation

Stotesbery alleges that Dousman retaliated against him because he reported retaliation. Stotesbery explains that after he reported Magner's conduct to Kirkley by phone and Dousman officials by email, Dousman "ignored these reports, ratified Magner's conduct, and [engaged in] continued reprisals." *See* Dkt. 1 ¶ 50. But Stotesbery hasn't alleged any facts supporting this theory of retaliation. Stotesbery alleges that he called Kirkley after he resigned to tell his side of the story, but that bare allegation doesn't plausibly suggest retaliation by Kirkely. And the bare allegation that Dousman engaged in continued reprisals appears to be redundant with Stotesbery's second and fourth theories of retaliation, both of which fail to state a plausible retaliation claim. In short, Dousman hasn't alleged specific facts about the alleged reprisals that would support a retaliation claim. I will not allow Stotesbery to proceed on a retaliation claim based on his third theory.

### 5. Fourth theory of retaliation

Stotesbery alleges that Dousman retaliated against him by disparaging him publicly to community partners, which has "effectively blacklist[ed] him from future employment opportunities." *Id.* ¶ 54. As I've explained, this accusation is merely conclusory without specific facts to support it. I will not allow Stotesbery to proceed on a retaliation claim based on the fourth theory.

10

### 6. Amending the complaint

I will allow Stotesbery to file an amended complaint that fixes the pleading problems described above. The amended complaint must be filed on the court's nonprisoner complaint form, which the court will send him with this order. If Stotesbery needs additional space, he may include no more than eight supplemental pages. Any supplemental page must have enough spacing between the lines and in the margins to ensure readability. For reference, the original complaint's spacing meets this standard.

In drafting his amended complaint, Stotesbery should remember to:

- Take care to allege what Dousman's employees did, or failed to do, to violate his rights.

- Avoid referring to several employees together. For instance, if more than one employee has taken a particular action that Stotesbery believes supports a claim against his employer, he should identify each employee who took that action.

- Omit legal arguments other than explaining what types of claims he wishes to assert.

ORDER

IT IS ORDERED that:

1. Plaintiff David Stotesbery's complaint, Dkt. 1, is DISMISSED.

2. Plaintiff may have until August 20, 2026, to submit an amended complaint that fixes the problems identified in this order.

3. Plaintiff must file his amended complaint on the court's nonprisoner complaint form, which the court will send him with this order. Plaintiff must fill out the form completely.

4.  The amended complaint will act as a complete substitute for the complaint. This case will proceed on only the allegations made and claims presented in the amended complaint.

5.  If plaintiff fails to comply with this order, I may dismiss this case.

6.  Defendant Dousman Transport Company's motion to dismiss, Dkt. 7, is DENIED.

7.  Plaintiff must inform the court of any new address. If he fails to do this and defendant or the court cannot locate him, this case may be dismissed.

8.  Plaintiff is to be sent a copy of the court's nonprisoner complaint form.

Entered July 21, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge