# AMENDED COMPLAINT

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

(Full name of plaintiff(s))

David Oliver Stotesbery

N/A

N/A

vs

Case Number: 25-CV-759-jdp

(to be supplied by clerk of court)

(Full name of defendant(s))

Dousman Transport Company, Inc.

N/A

N/A

---

A. PARTIES

1. Plaintiff is a citizen of Wisconsin (State) and resides at

521 Mellum Drive, Stoughton, WI 53589
(Address)

(If more than one plaintiff is filing, use another piece of paper).

2. Defendant Dousman Transport Company, Inc.
(Name)

is (if a person or private corporation) a citizen of Wisconsin
(State, if known)

and (if a person) resides at 1501 Industrial Avenue, Jefferson, WI 53549
(Address, if known)

and (if the defendant harmed you while doing the defendant's job)

worked for Not applicable - Defendant was Plaintiff's employer.
(Employer's name and address, if known)

(If you need to list more defendants, use another piece of paper.)

B. STATEMENT OF CLAIM

On the space provided on the following pages, tell:

1. Who violated your rights;
2. What each defendant did;
3. When they did it;
4. Where it happened; and
5. Why they did it, if you know.

Summary only. Complete allegations appear in the attached supplement.

1. Dousman employed Plaintiff as a school-bus driver at its Jefferson terminal.

2. Jamie Magner was Plaintiff's supervisor and the terminal's dispatcher.

3. On Sept. 20, 2023, Plaintiff left for his afternoon route in Bus 39.

4. While driving, its crossover-mirror assembly broke loose and dangled.

5. Plaintiff radioed the problem, returned, and was reassigned to Bus 69.

6. Bus 69's rear emergency exit would not open normally from inside.

7. It moved only inches; he used his foot and feared students could be trapped.

8. He reported the defect, refused Bus 69, and sought correction or replacement.

9. Magner had no other bus and communicated no inspection or repair.

10. Magner told Plaintiff to stay while she drove the same Bus 69.

11. He told Magner that changing drivers would not fix the defective exit.

12. Magner directed him to stay while she drove the same Bus 69.

13. He would be alone at the dispatch desk while Magner drove the route.

14. He had no training on dispatch, the phones, or dealing with customers.

15. Magner said that if Plaintiff left, she would treat him as having quit.

16. Plaintiff declined Bus 69 and the untrained dispatch directive, and left.

17. The exchange ended with Magner treating his departure as a quit.

18. At 3:11 p.m., Magner texted: 'That is a quit. I did NOT fire you.'

19. Plaintiff disputed resigning and called Kirkley about the ultimatum.

20. At 4:59 p.m., Magner said Bus 69 was out of service for repair.

21. She wrote 'See you in the am' but did not reconcile the 3:11 message.

22. At 9:33 p.m., Plaintiff restated the choices and wrote 'sticking with #3.'

23. That email followed the prior quit threat, classification, and Kirkley call.

24. DTC stated Plaintiff's 'termination was recorded as a resignation.'

25. DTC said it asked him back rather than put him in disciplinary status.

26. Plaintiff alleges his safety activity contributed to the challenged actions.

27. Plaintiff asserts one STAA retaliation claim.

28. See the complete Supplemental Statement of Claim.

## C. JURISDICTION

[X] I am suing for a violation of federal law under 28 U.S.C. § 1331.

OR

[ ] I am suing under state law. The state citizenship of the plaintiff(s) is (are) different from the state citizenship of every defendant, and the amount of money at stake in this case (not counting interest and costs) is $ N / A.

## D. RELIEF WANTED

Describe what you want the court to do if you win your lawsuit. Examples may include an award of money or an order telling defendants to do something or stop doing something.

Declaration that Dousman violated the STAA.

Reinstatement to an appropriate driving position or, if not feasible, front pay.

Back pay and other lost compensation with interest, to the extent proved.

Compensatory damages for proven losses and emotional distress.

Punitive damages as allowed by 49 U.S.C. Section 31105.

Correction or expungement of the voluntary-quit or resignation classification.

A neutral employment reference.

Litigation costs and any allowable attorney fees.

Other appropriate legal or equitable relief.

See Supplemental Statement of Claim, paragraph 49.

E. JURY DEMAND

[X] Jury Demand - I want a jury to hear my case

OR

[ ] Court Trial – I want a judge to hear my case

Dated this 20 day of August 20 26.

Respectfully Submitted,

s/ David Oliver Stotesbery

Signature of Plaintiff

920-542-8635

Plaintiff's Telephone Number

mrstotes@pm.me

Plaintiff's Email Address

521 Mellum Drive

Stoughton, WI 53589

(Mailing Address of Plaintiff)

(If more than one plaintiff, use another piece of paper).

**REQUEST TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING THE FILING FEE**

[X] I **DO** request that I be allowed to file this complaint without paying the filing fee. I have completed a request to proceed in the district court without prepaying the fee and attached it to the complaint.

[ ] I **DO NOT** request that I be allowed to file this complaint without prepaying the filing fee under 28 U.S.C. § 1915, and I have included the full filing fee with this complaint.

IFP status was previously granted at Dkt. 3; no new application is attached.

# SUPPLEMENTAL STATEMENT OF CLAIM

The completed court form and these supplemental pages constitute Plaintiff's entire amended complaint and replace the original complaint in its entirety.

## I. PARTIES, EMPLOYMENT, AND JURISDICTION

**1.** Plaintiff David Oliver Stotesbery is a Wisconsin citizen. Defendant Dousman Transport Company, Inc. is a Wisconsin corporation that provides student transportation. Bus 69 was a school bus designed to transport more than ten persons, including the driver.

**2.** By September 20, 2023, Defendant employed Plaintiff as a part-time school-bus driver at its Jefferson, Wisconsin terminal. Jamie Magner was Defendant's Jefferson terminal manager, ordinarily performed the terminal's dispatch function, and directly supervised Plaintiff. Lawrence Kirkley was Defendant's president and chief executive officer.

**3.** Plaintiff filed a Surface Transportation Assistance Act complaint with the Occupational Safety and Health Administration on September 28, 2023, OSHA Case No. 301024164. OSHA issued findings dismissing the complaint on November 21, 2023. Plaintiff timely objected to OSHA's findings and requested an administrative hearing, and the matter was docketed before the Department of Labor Office of Administrative Law Judges as *Stotesbery v. Dousman Transport Co., Inc.*, No. 2024-STA-00026. No ALJ, Administrative Review Board, or Secretary final decision issued within 210 days, the delay was not caused by Plaintiff's bad faith, and Plaintiff filed this federal action on September 10, 2025 under 49 U.S.C. Section 31105(c). After Plaintiff filed this federal action, the OALJ proceeding was dismissed without prejudice.

**4.** This Court has jurisdiction under 28 U.S.C. Section 1331 and 49 U.S.C. Section 31105(c). The relevant events occurred at Defendant's Jefferson terminal in this district.

## II. SEPTEMBER 20, 2023 SAFETY REPORT AND REFUSAL

**5.** Plaintiff reported for his scheduled afternoon route and departed the terminal in Bus 39. While Plaintiff was driving toward the schools, Bus 39's front crossover-mirror assembly broke loose and dangled. Plaintiff radioed the problem, returned to the terminal, and was reassigned to Bus 69.

**6.** During his pre-trip inspection of Bus 69, Plaintiff found that the rear emergency-exit door would not open normally from inside. The door moved only a few inches, and Plaintiff had to use his foot to force it open. Plaintiff reasonably apprehended that students could suffer serious injury if the exit could not be opened quickly during a collision, fire, or emergency evacuation.

**7.** At approximately 3:02 p.m., Plaintiff telephoned Magner and reported that Bus 69 had failed his pre-trip inspection because its rear emergency exit was stuck. At approximately 3:04 p.m., he texted

that the door required kicking to open. At approximately 3:05 p.m., he texted, "I'm not driving it." Magner responded, "I don't have another bus."

**8.** By reporting the condition, explaining its severity, and stating that he would not drive Bus 69 in that condition, Plaintiff sought correction of the condition or a safe replacement vehicle. Before the later quit threat and classification, Magner did not communicate that Bus 69 had been inspected, repaired, or determined safe and did not provide a safe replacement bus.

## III. MAGNER'S DIRECTIVE AND PLAINTIFF'S CONTINUED SAFETY OBJECTION

**9.** At approximately 3:07 p.m., Plaintiff spoke with Magner inside the terminal. Only Plaintiff and Magner were present.

**10.** Magner told Plaintiff, "Fine, stay here and I'll go drive it." She did not communicate that Bus 69 would first be inspected or repaired.

**11.** Plaintiff told Magner that changing drivers would not fix Bus 69's defective rear exit.

**12.** Plaintiff thereby continued his safety objection and requested correction of the reported mechanical condition before Bus 69 transported students.

## IV. MAGNER'S STAY-IN-THE-OFFICE DIRECTIVE

**13.** Plaintiff was scheduled and trained to perform paid work as a school-bus driver. His ordinary work was driving an assigned student route.

**14.** Magner ordinarily performed the Jefferson terminal's dispatch function. Plaintiff had not been trained as a dispatcher or office employee.

**15.** After Plaintiff refused Bus 69, Magner directed him to stay in the office on dispatch while she drove the same bus on the student route.

**16.** Magner's directive would leave Plaintiff as the sole DTC employee in the terminal building and alone at the dispatch desk while she drove the route.

**17.** Plaintiff had not been trained on dispatch, the terminal's phones, or dealing with customers.

**18.** The stay-on-dispatch directive neither corrected Bus 69's defective rear exit nor provided Plaintiff a safe replacement bus or alternative driving assignment.

**19.** Plaintiff declined to drive Bus 69 or accept the untrained dispatch directive, and he left.

**20.** The terminal exchange began with Plaintiff's report and refusal and ended minutes later with Magner treating his departure as a quit.

## V. THE QUIT STATEMENT AND IMMEDIATE NOTICE

**21.** During the same dispute, Magner stated that if Plaintiff left the terminal, she would treat his departure as quitting. The choices she presented were that Plaintiff drive Bus 69, remain at the terminal while Magner drove Bus 69, or leave and be treated as having quit.

**22.** Before leaving, Plaintiff did not tell Magner that he wished to resign, did not say that he quit, and did not submit a resignation.

**23.** At approximately 3:11 p.m., Magner texted Plaintiff: "Ok. So, you chose to walk off your job. That is a quit. I did NOT fire you."

**24.** Plaintiff immediately disputed that characterization. He responded that he had left because Magner tried to require operation of a bus with reported safety problems and stated that he would contact Kirkley.

**25.** At approximately 3:23 p.m., Plaintiff texted Magner that East Elementary School had been notified that students should not be placed on Bus 39 or Bus 69 if either bus appeared for the route.

**26.** At approximately 3:13 p.m., Plaintiff called Kirkley. Plaintiff recalls reporting the incident and Magner's three-choice ultimatum.

**27.** Kirkley therefore received Plaintiff's report of Magner's ultimatum within minutes of the safety refusal and the 3:11 p.m. quit message.

## VI. THE 4:59 P.M. AND 9:33 P.M. EMAILS

**28.** At approximately 4:59 p.m., Magner emailed Plaintiff and copied Kirkley, Brad Behling, and Cindy Houk. She wrote that Bus 39 had been repaired and would be ready for Plaintiff's morning route, that "Bus 69, is out of service until we can fix the back door bracket," and "See you in the am."

**29.** The words "See you in the am" conveyed an invitation for Plaintiff to return. The email also confirmed that Bus 69 had been removed from service for repair. It did not expressly withdraw Magner's 3:11 p.m. quit declaration, explain how the invitation related to that declaration, or state whether DTC had corrected any quit classification in its employment records.

**30.** The 4:59 p.m. email was the only written DTC communication Plaintiff received before his 9:33 p.m. reply.

**31.** At approximately 9:33 p.m., Plaintiff replied and copied the same DTC officials. He restated Magner's choices as: (a) drive Bus 69 after it failed pre-trip; (b) sit in the office while Magner drove Bus 69 after it failed pre-trip; or (c) quit.

**32.** Plaintiff wrote: "This email being the only thing I've heard from you since offering me those choices, I'm sticking with #3." Plaintiff also wrote that he appreciated the opportunity to work for

DTC, that the position in which Magner had placed him was unacceptable, and that he did not plan to be placed in that position again.

**33.** Plaintiff's 9:33 p.m. email was sent after Magner's quit threat and 3:11 p.m. quit declaration, after Plaintiff immediately disputed that characterization, and after Plaintiff called Kirkley. It did not precede any of those events.

**34.** Plaintiff acknowledges the wording of his 9:33 p.m. email but disputes DTC's characterization of the entire separation as a voluntary resignation unrelated to his safety activity. Plaintiff alleges that the objective chronology shows that the separation arose from the same emergency-exit dispute.

## VII. DEFENDANT'S LATER STATEMENTS AND EMPLOYMENT RECORD

**35.** Defendant later admitted that Bus 39's mirror was broken, that Bus 69's rear emergency exit was difficult to open or had been reported as not working properly, and that Bus 69 was removed from service on September 20, 2023 to repair its rear-exit bracket.

**36.** Defendant stated that Magner, Kirkley, and mechanic Tom McCune examined Bus 69 after Plaintiff's report and that a terminal mechanic assessed and repaired the rear-exit condition.

**37.** Defendant also stated: "There was no investigation into the Complainant's voluntary resignation."

**38.** Defendant stated that Plaintiff's "termination was recorded as a resignation" because Defendant considered his departure and later communications to be a voluntary resignation. Plaintiff disputes that characterization.

**39.** In a signed interrogatory response, Defendant also stated that, "rather than put the Complainant into a disciplinary status for his conduct," it asked Plaintiff to return.

**40.** Defendant did not identify what "conduct" it meant in that response.

**41.** Plaintiff did not resume driving for Defendant after September 20, 2023. He alleges emotional distress, humiliation, anxiety, and harm from the disputed voluntary-quit or resignation classification. He seeks recovery for any back pay, lost route compensation, or other economic loss shown to have resulted from Defendant's actions.

## VIII. ONE CLAIM - STAA RETALIATION

**42.** Plaintiff asserts one retaliation claim against Defendant under 49 U.S.C. Section 31105(a)(1)(A)(i) and Section 31105(a)(1)(B)(ii).

**43.** Before Magner's 3:11 p.m. quit declaration, Plaintiff engaged in protected activity by reporting Bus 69's defective emergency exit, personally refusing to drive Bus 69 in that condition, and seeking correction of the condition or a safe replacement vehicle. Magner responded that she had no other bus,

and no correction or safe replacement was communicated to Plaintiff before the quit threat and classification.

**44.** Plaintiff continued his safety objection by telling Magner that her same-bus plan would not work because changing drivers did not fix the defective rear exit.

**45.** Magner knew of those activities because Plaintiff communicated them directly to her. During the same dispute and within minutes of those communications, she directed Plaintiff to stay in the office while she drove Bus 69, stated that leaving would be treated as quitting, and sent the 3:11 p.m. quit message.

**46.** Plaintiff alleges that the untrained dispatch directive, the quit threat, the 3:11 p.m. quit classification, any resulting loss of compensation, and Defendant's maintained resignation record were unfavorable actions concerning his pay, terms, conditions, or privileges of employment. The dispatch directive and quit classification arose in the same sequence immediately following Plaintiff's safety report and refusal.

**47.** Plaintiff's protected activity contributed to the challenged actions. The quit threat and classification occurred during the same dispute and within minutes of his safety report, refusal, request for correction or safe equipment, and continued objection. Defendant later confirmed that Bus 69 was removed from service and repaired.

**48.** Magner acted as Defendant's terminal manager and Plaintiff's direct supervisor. Kirkley received prompt notice as Defendant's president and chief executive officer. Defendant later maintained the resignation classification and is responsible for the challenged actions.

## IX. RELIEF REQUESTED

**49.** Plaintiff requests all relief available under 49 U.S.C. Section 31105, including a declaration of violation; reinstatement to an appropriate driving position or, if reinstatement is not feasible, front pay; back pay and other lost compensation with interest to the extent proved; compensatory damages; punitive damages as allowed by law; correction or expungement of the voluntary-quit or resignation classification; a neutral employment reference; litigation costs and allowable attorney fees; and other appropriate legal or equitable relief.