UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

David Oliver Stotesbery,

Plaintiff,

-vs-

Case No.: 25-cv-759-jdp
Nature of suit: 790 Labor: Other

Dousman Transport Company, Inc.

Defendant.

---

DEFENDANT'S MOTION FOR A MORE DEFINITE STATEMENT
UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(e)

---

In lieu of a responsive pleading to the Plaintiff's new Complaint, Defendant Dousman Transport Company, Inc. ("Dousman") submits the following Motion for a More Definite Statement under Federal Rule of Civil Procedure 12(e).

INTRODUCTION

In its screening Order dated July 21, 2026, the Court allowed the Plaintiff to file a new complaint in this matter. Dkt. 16. Critical to that decision was the Court's directive to the Plaintiff that he must clarify his claim of retaliation under the Surface Transportation Assistance Act (STAA), 49 U.S.C. § 31105. The Plaintiff does not allege that Dousman discharged or disciplined him. He is making a constructive discharge claim (walking off the job) in response to a perceived adverse action by the company following his complaint about an alleged unsafe condition on a school bus he was assigned to drive.

The Court's Opinion specifically instructs the Plaintiff to describe what Dousman employees did or did not do that he believes violated his rights under the STAA. In response to

the Court's specific directions, the Plaintiff has made a new claim that, as alleged, does not allow Dousman to effectively admit or deny the allegations.

This Motion for a More Definite Statement asks the Court to order the Plaintiff to make a more definite statement of his new allegation that Dousman engaged in an adverse action against him.

## A. Procedural Posture

The Plaintiff initially filed an appeal with the U.S. Department of Labor's Office of Administrative Law Judges after his claim of retaliation under the STAA was dismissed by the federal Occupational Safety and Health Administration (OSHA) for failure to make a prima facie claim. Dkt. 10, Ex. 1. On September 10, 2025, the Plaintiff withdrew his appeal from the Department of Labor and refiled it in this Court requesting a de novo adjudication and a jury trial. Dkt. 1.

The Court accepted the original complaint for screening and did not issue a summons to the Plaintiff. Dkt. 3. Dousman notified the Court of its position that the Court lacks jurisdiction in this matter. Dkt. 5 and 6. Upon inquiry by Dousman, the Magistrate Judge gave leave to Dousman to file a motion to dismiss the original complaint. *Id*. The Court's July 21, 2026, Screening Order found jurisdiction but dismissed all of the Plaintiff's claims under each possible theory of liability. Dkt 16. The Court directed the Plaintiff to file a new complaint "taking care to allege what Dousman employees did, or failed to do, to violate [the Plaintiff's] rights" if he intended to proceed with the litigation. Dkt. 16, p. 11.

On August 20, 2026, the Plaintiff filed a new complaint containing a new retaliation claim. Dkt. 18. No summons has yet been issued by the Court; however, Dousman now requests a more definite statement from the Plaintiff regarding his new claim.

## B. Legal Standard

A party may move the Court to order a more definite statement of the allegations in the complaint when the allegations are "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. Proc. 12(e).

As both OSHA and the Court have explained in this matter, a claim for retaliation under the STAA must describe plausible allegations of an adverse action taken by the employer toward the employee in response to protected activity. *See, Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) (a complaint is implausible when it fails to allege facts that connect the defendant to an illegal action).

## C. Dousman's Request for a More Definite Statement

In the July 21, 2026, Screening Order, the Court finds that the Plaintiff did not plausibly claim actionable retaliation under the STAA because he was given the option to stay at the terminal while the manager completed the bus route.[1] "As I've explained, Stotesbery's allegations don't plausibly suggest that Dousman terminated or constructively discharged him; he alleges that he stopped working for Dousman even though Magner said that he could stay at the terminal while she drove the bus." Dkt. 16, p. 9. Similarly, the Court finds that the Plaintiff's claims of blacklisting, continued reprisals and public disparagement did not overcome the Complaint's insufficiency. Dkt. 16, p. 10.

The Plaintiff's new complaint is virtually identical in all respects to his original federal district court complaint with the exception of a new allegation -- that the terminal manager ordered

---

[1] / Dousman does not accept that the manager's statement, "Fine, stay here, I'll go drive it" refers to the bus. Rather, the statement refers to her offer to complete the bus route which, at 3:07 p.m., had to be immediately underway because students were waiting to go home.

him to "stay in the office on dispatch." Dkt. 18, p. 7. In an entirely new claim, the Plaintiff alleges that he decided to walk off the job rather than "accept the untrained dispatch directive." *Id*.

For comparison, the relevant language from each of Plaintiff's complaints in this matter is excerpted below:

---

<u>OSHA Complaint filed 10/18/2023, Dkt. 10, Ex. 1, p. 2</u>

On September 20, 2023, after reporting to work for my afternoon route, I was conducting my pre-trip inspection of the bus I was assigned to operate (#69) after finding that my primary bus (#39) had a broken mirror bracket. In the course of my inspection, I discovered that the rear emergency exit door was inoperable and could not be opened without kicking it.

At 3:02pm, I called and reported the issue to my manager (Ms. Magner) stating that the school bus I was assigned to drive had failed my pre-trip due to a stuck rear emergency exit door. She informed me that there were no other buses available.

At 3:07pm, following a conversation via text regarding my concern, I entered the office for a face-to-face conversation with my manager. I explained to her that it wasn't my responsibility to ensure there were enough buses. She replied, "Fine, stay here and I'll go drive it." Knowing that the bus was unsafe and that my own children are on my route, I told her that was also unacceptable. She then stated that if I left the facility, I would be quitting. I was effectively left with 3 choices-

1. Drive the bus after it had failed my pre-trip.
2. Sit in the office while my manager drove the unsafe bus.
3. Leave the facility, abandoning my job.

With no other options available to ensure the safety of the children, ultimately, I did leave.

<u>Original federal district court Complaint filed 9/10/2025, Dkt. 1, p. 5</u>

**19.** At approximately 3:02-3:06 p.m., Plaintiff reported the defect to Terminal Manager Jamie Magner by phone call and text message, explaining that the rear door was stuck, that he had to kick it to get it open, and that he would not drive the bus in that condition. Magner responded that no other buses were available.

**20.** Plaintiff reiterated that he would not operate an unsafe bus. Plaintiff's refusal was protected activity under 49 U.S.C. § 31105(a)(l)(B).

**21.** Defendant has admitted through discovery that Bus 39's mirror was broken and that Bus 69's emergency exit was not working properly, requiring the bus to be removed from service on September 20, 2023. These admissions confirm that Plaintiff's refusal was objectively reasonable and protected under federal law.

**22.** At approximately 3:07 p.m., Magner confronted Plaintiff in person and issued an ultimatum: (a) drive the unsafe bus; (b) remain at the terminal while Magner drove the route in that same bus; or (c) leave, which Magner stated would be treated as a quit.

**23.** Faced with no safe or lawful option, Plaintiff left the terminal rather than operate-or condone operation of-an unsafe school bus.

New federal district court Complaint filed 8/20/2026, Dkt. 18, p. 7

**15.** After Plaintiff refused Bus 69, Magner directed him to stay in the office on dispatch while she drove the same bus on the student route.

**16.** Magner's directive would leave Plaintiff as the sole DTC employee in the terminal building and alone at the dispatch desk while she drove the route.

**17.** Plaintiff had not been trained on dispatch, the terminal's phones, or dealing with customers.

**18.** The stay-on-dispatch directive neither corrected Bus 69's defective rear exit nor provided Plaintiff a safe replacement bus or alternative driving assignment.

**19.** Plaintiff declined to drive Bus 69 or accept the untrained dispatch directive, and he left.

---

The Plaintiff did not allege to OSHA that he was assigned, as retaliation, to do untrained dispatch. Nor was this allegation made in his original complaint filed in federal district court. These omissions, on their own, make the new allegation facially implausible.[2]

Even if the new allegation were allowed at this stage in the litigation, the new allegation does not satisfy the Court's Screening Order requirements. "To state a claim, Stotesbery must allege that Dousman took adverse action against him based on his reported safety concerns." Dkt. 16, p. 9. To meet the sufficiency and plausibility requirements of Federal Rule of Civil Procedure 8, the complaint must make a plausible claim that the defendant has violated the law.[3]

---

[2] / Dousman also denies that these alleged acts actually occurred as described.

[3] / Rule 8 requires that a complaint (1) set forth a "short and plain statement of the grounds for the court's jurisdiction ....; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought...." Pursuant to Rule 8(d), "each allegation must be simple, concise and direct." Further, a complaint must contain allegations sufficient to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)). The allegations must provide more than the "sheer possibility" of liability to meet the requirements of Rule 8. *Iqbal,* 129 S.Ct. At 1949. What is required is *plausibility. Id.*
Carter v. Huibregtse, No. 09-CV-437-BBC, 2009 WL 3415817, at *1 (W.D. Wis. Oct. 20, 2009)(unreported)

The Court has explained that the Plaintiff's allegations in the original complaint do not state a plausible claim of constructive discharge or involuntary termination. His allegation that he stopped working for Dousman even though his manager said he could stay in the terminal while she drove the bus route are insufficient legally to allow for a retaliation claim under the STAA. Dkt. 16, p. 8 ("Stotesbery hasn't alleged any facts plausibly suggesting that having to stay at the terminal while Magner drove the bus amounted to discipline or discrimination in the pay, terms, or privileges of his employment.")

What is unclear is whether the Plaintiff is now alleging that Dousman engaged in an illegal and adverse action against him that violated his rights under the STAA by directing him to work at the dispatch desk while the manager completed his bus route.

The Plaintiff's new claim regarding the stay-in-the-office directive appears to be the Plaintiff's differentiator in response to the Court's Screening Order. As alleged, it is too vague and ambiguous to allow for a response.

The Court directed the Plaintiff to "take care to allege what Dousman's employees did, or failed to do, to violate his rights." Dkt. 16, p. 11. The new complaint adds only the allegation that the manager directed the Plaintiff to stay in the office on dispatch and that he was not trained for dispatch work. The Plaintiff does not allege how this directive, if it occurred, would have violated his rights.

If the Plaintiff is now alleging that the stay-in-the-office directive is the employer action that makes a plausible, legally sufficient claim of an STAA violation and supports his claim of constructive discharge, Dousman must be clearly informed of this before the company can reasonably prepare a response.

## CONCLUSION

Dousman respectfully asks the Court to order the Plaintiff to file a more definite statement describing his new claim that Dousman retaliated against him and violated his rights under the STAA by giving him the option to stay in the terminal office while the manager completed the school bus route that the Plaintiff refused to drive.

Dated this 3rd day of September, 2026.

Respectfully submitted,

LEWIS LAW OFFICE, LLC

Attorney for the Respondent

*Julie Lewis*

______________________________

Julie A. Lewis
State Bar No. 1048367

P.O. Address
345 W. Washington Ave., Suite 201
Madison, WI 53703

Direct Contact
Julie A. Lewis
(608) 298-7324/office
jlewis@jlewislawoffice.com